# Exhibit C

# SERVICING AGREEMENT

## SERVICES AGREEMENT

**THIS SERVICES AGREEMENT** (this "Agreement") is made this 12-22-2015 ("Date'), by and among LienClear - 0001, LLC(the "Seller"), REI Holdings (the "Buyer") LienClear, LLC ("Servicer").

## RECITALS:

**WHEREAS,** Buyer and Seller are party to a Tax Lien Purchase and Sale Agreement of even date herewith pursuant to which Seller is selling to Buyer and Buyer is purchasing from Seller the tax liens ("Tax Liens") that set forth on Schedule 1 hereto (such purchase and sale referred to herein as the "Transaction");

**WHEREAS,** in connection with the Transaction, Buyer and Seller are entering into an escrow agreement of even date herewith pursuant to which they are engaging a third party escrow agent ("Escrow Agent") to perform escrow services in connection with the Transaction; and

**WHEREAS,** in connection with the Transaction, Buyer and Seller desire to enter into this Agreement in order to engage Servicer to perform the transfer and assignment of the Tax Liens from Seller to Buyer in connection with the Transaction, and Servicer desires to provide such services in accordance with the terms set forth herein.

**NOW, THEREFORE**, in consideration of the promises and covenants made herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT:

1. **Services**. Servicer shall provide the services to Buyer and Seller as set forth on Exhibit A hereto (the "Services") in accordance with this Agreement.

2. **Fees for Services**. Upon completion of the Services, the Servicer shall be entitled to the fees ("Fees") set forth on Exhibit A.

3. **Term.** This Agreement shall become effective on the date hereof and shall remain in effect until completion of the Services as set forth on Exhibit A, unless earlier terminated pursuant to the terms hereof. Notwithstanding any other provision of this Agreement to the contrary, Buyer and Seller may terminate this Agreement in its entirety upon (i) any act or omission that may constitute negligence or willful misconduct by Servicer; or (ii) a breach by Servicer of this Agreement.

4. **Servicer's Covenants**. Servicer accepts the relationship of trust and confidence established by this Agreement and covenants and warrants as follows:

a. Servicer will (i) employ the Servicer's best skill, efforts and judgment in performing the Services; (ii) utilize efficient business administration and supervision; and (iii) perform the Services in the most expeditious and economical manner.

b. The Services shall be performed in a timely, highly professional and ethical manner, in accordance with applicable industry standards, and in accordance with the terms and conditions of this Agreement.

c. Servicer shall, in performing the Services, comply with all applicable federal, state and local laws, ordinances, regulations and orders (collectively, "Laws").

d. Servicer shall, prior to commencing performance of any of the Services, obtain, and shall maintain throughout the term of this Agreement, all approvals, licenses and/or permits required by any Law or governmental agency, board or other jurisdiction in order to provide the Services.

e. Servicer promptly shall notify the Company of any defects, deficiencies or other issues that impede or preclude Servicer from providing any or all of the Services. Servicer represents that it has investigated the conditions necessary to provide the Services and assumes the liabilities and risks related thereto.

f. Servicer shall be solely responsible for the office space, facilities, equipment, means, methods, techniques and procedures used by Servicer to perform the Services under this Agreement.

g. Servicer in their sole discretion and at their own risk reserves the right to retain or employ a subcontractor from time to time in order to meet the terms and deadlines detailed in the Services rendered under this Agreement.

7 . **Confidentiality**. Servicer will become informed of confidential, proprietary and secret information concerning Buyer and Seller and their respective affiliates, including without limitation, information concerning their business, operations, methodology, research, customers, corporate planning, products, business practices and financial condition (collectively, "Confidential Information"). Servicer agrees to keep in strict confidence, and not divulge, make available or use (except for use in the performance of the Services under this Agreement) any such Confidential Information of either Buyer or Seller.

8. **Expenses**. Servicer agrees that it is solely responsible for any and all funds expended or expenses or liabilities incurred by it in connection with its performance under this Agreement. It is understood and agreed that neither Buyer or Seller shall be liable for expenses or damages in any form by reason of any termination of this Agreement in accordance with the terms hereof including but not limited to any claims relating to or arising out of Servicer's expected future performance under this Agreement.

9. **Indemnification**. Servicer shall indemnify, hold harmless and, if requested by the Buyer or Seller, each in their sole and absolute discretion, defend Buyer and Seller, their respective affiliates and respective officers, directors, shareholders, employees, partners, members, managers, agents, attorneys, successors, assigns and authorized representatives from and against any and all claims, demands, actions, causes of action, judgments, damages, recoveries, fines, penalties, interest, liabilities, fees, costs, expenses and other losses, including reasonable attorneys' fees and court costs (collectively, "Losses") to the extent arising out of

Servicer's performance under this Agreement, Servicer's breach of any representation, warranty or covenant under this Agreement, Servicer's negligence or misconduct, or Servicer's breach of any Law.

10. **Books and Records; Audit.** Servicer shall maintain books and records with respect to the Services to be provided hereunder and the Payments to be paid hereunder as reasonably requested by Buyer or Seller, which shall be provided to Buyer and/or Seller for review as requested.

11. **Independent Contractor; Scope of Authority.** The relationship between Servicer and each of Buyer and Seller is that of independent contractor, and nothing contained in this Agreement shall any party a partner, agent, employee, joint venturer, dealer or franchisee of any other party. Servicer is retained by Buyer and Seller only for the purposes and to the extent set forth in this Agreement. No party may bind another unless specifically authorized to do so in writing.

12. **Notices.** All notices, demands, requests and other communications required or permitted hereunder shall be in writing and shall be (i) personally delivered with a written receipt of delivery; (ii) sent by a nationally recognized overnight delivery service requiring a written acknowledgement of receipt or providing a certification of delivery or attempted delivery; (iii) sent by certified or registered mail, postage prepaid, with return receipt requested; or (iv) sent by facsimile (receipt confirmed electronically and promptly confirmed by mail, overnight courier or personal delivery to the recipient), to the attention of the individual shown below at the address set forth below, or to such other address, attention of such individual, as either party may from time to time designate in writing to the other in accordance herewith. All notices shall be deemed effective when actually delivered as documented in a delivery or confirmation receipt.

If to the Seller: LienClear - 0001, LLC

401 Park Avenue South 10th Floor

New York, New York, 10016

If to the Buyer: REI Holdings

691 W 1200 N Ste 100

Springville, UT, 84663

If to Servicer: LienClear, LLC

401 Park Avenue South 10th Floor

New York,New York,10016

13. **Governing Law; Venue.** This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, with regard to the conflict of laws provisions thereof, and the parties consent to the sole and exclusive jurisdiction of the state and federal courts having jurisdiction in the County of Wilmington, Delaware for any dispute arising out of this Agreement.

14. **Attorneys Fees**. The substantially prevailing party in any action or proceeding brought to enforce or interpret this shall be awarded and receive its costs and reasonable attorney's fees (including those of in-house counsel).

15. **Entire Agreement.** This Agreement, together with the addendum and exhibits attached hereto and thereto, contains all of the terms and conditions agreed upon by the parties hereto with reference to the subject matter hereof and supersedes all prior agreements and negotiations with respect to the subject matter hereof. This Agreement cannot be modified or changed except by written instrument signed by all parties hereto.

16. **No Waiver.** No provision of this Agreement shall be deemed to have been waived, except if such waiver is contained in a written instrument executed by the party against whom such waiver is to be enforced. No waiver by a party of any term or condition of this Agreement shall constitute a waiver by such party of any prior, concurrent or subsequent breach or default of the same or any other term or condition of this Agreement.

17. **Severability.** In the event that any part of this Agreement shall be held to be invalid or unenforceable by a court of competent jurisdiction, such provision shall be reformed and enforced to the maximum extent permitted by law. If such provision cannot be reformed, it shall be severed from this Agreement and the remaining portions of this Agreement shall be valid and enforceable.

18. **Assignability.** This Agreement shall be binding and inure to the benefit of the successors and permitted assigns of the parties hereto. The parties acknowledge and agree that the obligations of Servicer are personal to Servicer and that Servicer may not assign or subcontract its rights, obligations or this Agreement, except with the prior written approval of Buyer and Seller. Each of Buyer and Seller may, without the consent of the other parties, assign this Agreement to any affiliate or subsidiary or to any person or entity acquiring substantially all of its assets.

19. **Counterparts/Facsimile.** This Agreement may be executed in several counterparts, and each counterpart shall constitute one Agreement binding on all parties hereto, notwithstanding that all of the parties are not signatory to an original or same counterpart. This Agreement may be executed by facsimile signature or electronically.

20. **Survival.** The provisions of this Agreement which, by their reasonable terms, are intended to survive termination of this Agreement (such as indemnity and confidentiality obligations) shall survive termination. In the event that this Agreement is terminated or expires by its terms, such expiration or termination shall not affect any liability or other obligation which shall have accrued prior to such termination.

21. **Authority to Execute.** Each person executing this Agreement represents and warrants that it is duly authorized to execute this Agreement by the party on whose behalf it is so executing.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**BUYER**

By:

Name: Brandon Neff

Title: Manager

**SELLER**

By:

Name: Ben Edwards

Title: Authorized Signer

**SERVICER**

By: *Donald Byrne*

Name: Donald Byrne

Title: Servicer

**SCHEDULE 1**

**TAX LIENS**

{Attached}

**EXHIBIT A**

**Services**

Servicer shall take all actions and execute and deliver, or oversee the execution and delivery of, all documents and certificates necessary to effectuate the transfer of ownership of the Tax Liens (except for Excluded Tax Liens (as defined herein)) from Seller to Buyer, including without limitation:

1. Review the list of Tax Liens to determine whether any of the Tax Liens are untransferable due to a redemption or for any other reason (such untransferable Tax Liens are referred to herein as the " Excluded Tax Liens");

2. For all Tax Liens other than Excluded Tax Liens, execute or oversee the execution of the assignment portion of each Tax Lien certificate on behalf of the Seller to effectuate the assignment of each such Tax Lien to Buyer;

3. Deliver or oversee the delivery of such executed Tax Lien certificates to Buyer or Buyer's designated representative;

4. Upon delivery of the foregoing documents to Buyer or Buyer's representative, execute the attached "Certificate of Servicer Evidencing Transfer of Tax Liens" and deliver such certificate along with a final list of all transferred Tax Liens to the Escrow Agent, Buyer and Seller; and

5. Take such other actions as reasonably requested by Buyer or Seller to further effectuate the completion of the Transaction.

**Fees**

Upon completion of the Services set forth above, including without limitation execution and delivery of the Certificate of Servicer Evidencing Transfer of Tax Liens" to the Escrow Agent, Escrow Agent shall pay to Servicer $ 18,587.10 in such form as directed by Servicer.

**CERTIFICATE OF SERVICER EVIDENCING TRANSFER OF TAX LIENS**

Date: 12-22-2015

U.S. Bank Global Corporate Trust Services (" Escrow Agent")

Attn: Kathleen A. Connelly

DN-CO-T12CT

950 17th Street, 12th Floor

Denver, CO 80202

(" Seller") LienClear - 0001, LLC

Attn: Ben Edwards

Address: 401 Park Avenue South 10th Floor

New York, New York, 10016

(" Buyer") REI Holdings

Attn: Brandon Neff

Address: 691 W 1200 N Ste 100

Springville, UT, 84663

RE: Certification of Servicer Evidencing Transfer of Ownership of Tax Liens

Reference is made to (i) the Tax Lien Purchase and Sale Agreement between Buyer and Seller dated 12-22-2015 ("Purchase Agreement") pursuant to which Seller is selling to Buyer and Buyer is purchasing from Seller certain tax liens as further set forth therein ("Tax Liens"); (ii) the Services Agreement between Buyer, Seller and the undersigned dated 12-22-2015 ("Services Agreement") pursuant to which the undersigned ("Servicer") is effectuating the transfer of ownership of the Tax Liens from Seller to Buyer; and (iii) the Escrow Agreement between Buyer, Seller and Escrow Agent dated 12-22-2015 ("Escrow Agreement"), in which the undersigned Servicer is so identified.

The undersigned hereby certifies that all actions have been taken and all documents have been executed and delivered in accordance with the Purchase Agreement, Services Agreement and the applicable local taxing authority to effectuate the transfer of ownership of the Tax Liens set forth on the attached list from Seller to Buyer. This certificate is being delivered in accordance with the terms and conditions of the Escrow Agreement.

Respectfully,

("Servicer")     *Donald Byrne*

Address: 401 Park Avenue South 10th Floor

New York, New York, 10016