**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REI HOLDINGS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-01401-MN |
| | ) | |
| LIENCLEAR – 0001, LLC, BCMG, LLC, | ) | |
| BLOXTRADE, LLC, LIENCLEAR, LLC, | ) | |
| THOMAS MCOSKER | ) | |
| AND DONALD BYRNE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS**

Dated: October 30, 2018

LECLAIRRYAN, PLLC

Andrew L. Cole (No. 5712)
800 North King Street, Suite 303
Wilmington, DE 19801 US
(302) 394-6817
andrew.cole@leclairryan.com

Counsel for Defendants

# **TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEDINGS                    1

SUMMARY OF ARGUMENT                                                    1

STATEMENT OF FACTS                                                     3

    A.  Sale Agreement                                        3

    B.  Services Agreement                                    6

ARGUMENT                                                               6

    1.  Legal Standard for Motion to Dismiss for Failure to State a Claim    6

    2.  The Complaint Alleges no Actionable Conduct by BLOXTrade or Byrne    7

    3.  Count I (Fraud in the Inducement) Fails to State a Claim    9

        i.      Count I (Fraud in the Inducement) is Barred by
             Enforceable Integration Clauses                  9

        ii.     Count I (Fraud in the Inducement) is not
             Pled with Sufficient Particularity                10

        iii.    Count I (Fraud in the Inducement) does not Implicate Duties
             Separate and Apart from the Contracts             12

        iv.     REI was not Justified in Relying on the Alleged Misrepresentations    13

    4.  Count II (Breach of Contract Against LienClear0001 – Sale Agreement)
       Fails to State a Claim                                 14

    5.  Count IV (Civil Conspiracy) Fails to State a Claim    16

    6.  Count V (Breach of the Implied Covenant of Good Faith and Fair Dealing)
       Fails to State a Claim                                 17

    7.  Count VI (Unjust Enrichment) Fails to State a Claim    19

CONCLUSION                                                            20

# TABLE OF AUTHORITIES

**Cases**                                                                          **Pages**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)                                           5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)                              5

*MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419 (D. Del. 2004)               8

*In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747 (Bankr. D. Del. 2007)             8

*Nicolet, Inc. v. Nutt,* 525 A.2d 146 (Del. 1987)                                  8, 17

*Ramunno v. Cawley,* 705 A.2d 1029 (Del.Super.Ct. 1998)                            8

*Kalmanovitz v. G. Heileman Brewing Co.,* 595 F.Supp. 1385 (D.Del. 1984)           9

*Prairie Capital III, L.P. v. Double E Holding Corp*., 132 A.3d 35 (Del. Ch. 2015)   9, 10

*RAA Mgmt., LLC v. Savage Sports Hldgs., Inc.*, 45 A.3d 107 (Del. 2012)            9

*Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032 (Del. Ch. 2006)               10

*S. Track & Pump, Inc. v. Terex Corp*., 722 F. Supp. 2d 509 (D. Del. 2010)         10

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp*.,
    742 F.2d 786 (3d Cir. 1984)                                                    10

*El v. Davis*, No. CIV.A. 12-1580-GMS, 2013 WL 1914233 (D. Del. May 7, 2013)       11

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997)   11

*Brasby v. Morris*, No. C.A. 05C-10-022-RFS,
    2007 WL 949485 (Del. Super. Ct. Mar. 29, 2007)                                 12

*Narrowstep, Inc. v. Onstream Media Corp.,* No. CIV.A.
    5114-VCP, 2010 WL 5422405 (Del. Ch. Dec. 22, 2010)                             12

*MicroStrategy, Inc. v. Acacia Research Corp.*, No. CIV.A. 5735-VCP,
    2010 WL 5550455 (Del. Ch. Dec. 30, 2010)                                       13

*Debakey Corp. v. Raytheon Serv. Co.,* No. 14947,
    2000 WL 1273317 (Del. Ch. Aug. 25, 2000)                                       13

*VGS, Inc. v. Castiel*, No. Civ.A. 17995, 2004 WL 876032 (De. Ch. Apr. 22, 2004)   13

*Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513 (Del. Super. Ct.),
  aff'd, 886 A.2d 1278 (Del. 2005)                                                    14

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428 (Del. 2005)      17

*Sample v. Morgan*, 935 A.2d 1046 (Del. Ch. 2007)                                     17

*Superior Court Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv. Inc.*,
  2004 WL 877599 (R.I. Super. 2004))                                                  17

*In re Asbestos Litig.*, 509 A.2d 1116 (Del. Super. Ct. 1986)                         17

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)                    17

*John Peterson Motors, Inc. v. General Motors Corp.*, 613 F.Supp. 887 (D. Minn. 1985) 17

*TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320 (D. Del. 2014)                  18

*Anderson v. Wachovia Mtg. Corp.*, 497 F.Supp.2d 572 (D.Del. 2007)                    18

*NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1 (Del. Ch. 2009)                      18

*Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14 (Del.Ch.1992)  18

*DeLucca v. KKAT Mgmt., L.L.C.*, No. Civ.A. 1384-N,
  2006 WL 224058 (Del. Ch. Jan. 23, 2006)                                            18

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010)                                         19

*Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F. Supp. 192 (D. Del. 2017)           19

*Nemec v. Shrader*, 2009 WL 1204346 (Del. Ch. Apr. 30, 2009),
  *aff'd*, 991 A.2d 1120 (Del. 2010)                                                  19

*Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217 (Del. Ch. Sept. 18, 2014)          20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)                                                              6

Fed. R. Civ. P. 9(b)                                                          9, 10, 11

Fed. R. Civ. P. 9(c)                                                                  9

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On September 10, 2018, Plaintiff REI Holdings, LLC ("REI") filed its Complaint against LienClear – 0001, LLC ("LienClear0001"), LienClear, LLC ("LienClear") BCMG, LLC ("BCMG"), BLOXTrade, LLC ("BLOXTrade") (LienClear0001, LienClear, BCMG, and BLOXTrade, collectively, the "Corporate Defendants"), Thomas McOsker ("McOsker"), and Donald Byrne ("Byrne") (McOsker and Byrne, collectively, the "Individual Defendants") (the Corporate Defendants and the Individual Defendants, collectively, the "Defendants").

REI asserts claims of Fraud in the Inducement against all defendants (Count I), Breach of Contract against LienClear0001 (Count II), Breach of Contract against LienClear ("LienClear") (Count III), together with claims for Civil Conspiracy (Count IV), Breach of Implied Covenant of Good Faith and Fair Dealing (Count V), and Unjust Enrichment (Count VI), each against all defendants. The Defendants filed a motion seeking dismissal of all claims except Count III (which is pled solely against LienClear) (the "Motion to Dismiss"). This is the Defendants' opening brief in support of their Motion to Dismiss.

## SUMMARY OF ARGUMENT

REI, a sophisticated tax lien purchaser, alleges the existence of defective tax liens among a portfolio purchased from LienClear0001, a matter specifically addressed by the contract evidencing the sale. REI seeks relief from the seller, LienClear0001, but also seeks various types of relief against LienClear, an entity that provided transfer services related to the portfolio, two separate entities related to LienClear, and two individual agents or employees of the entity defendants.

1.      REI's fraud claim against all defendants fails because the parties' contracts contain integration clauses in which the parties disclaim reliance on any prior representations or warranties, and also because REI fails to plead its fraud claims with sufficient particularity.

2.      REI's contract claim against LienClear0001 fails because REI fails to allege a breach of any of the express representations or warranties in its contract with LienClear0001.

3.      REI's civil conspiracy claim fails as to all defendants *inter alia* because the entity defendants, which are under common ownership, and the individual defendants, agents of one or more of the entity defendants, cannot conspire together as a matter of Delaware law.

4.      REI's claim for breach of the implied covenant of good faith and fair dealing fails as the matters complained of are expressly addressed by the parties' contracts, and REI, a sophisticated market participant is not entitled to assert the covenant of good faith and fair dealing as a means to re-write its contracts.

5.      Finally, REI's unjust enrichment claim fails as to all defendants as a matter of law because, again, the subject matter of the Complaint is governed by express contracts.

While LienClear disputes the allegations supporting the sole remaining claim, REI's breach of contract claim asserted in Count III, the allegations appear sufficient to survive a motion to dismiss.  With respect to all defendants other than LienClear, however, the Complaint fails to state a claim upon which relief may be granted, and must be dismissed as to Defendants McOsker, Byrne, LienClear0001, BCMG and BLOXTrade.  Further, it is respectfully noted that to the extent Counts I, IV and V are dismissed, the sole remaining defendants will be LienClear and LienClear0001.

REI is a sophisticated market participant engaged in the business of purchasing portfolios of tax liens issued by municipalities across the United States, and then reselling those tax lien certificates to retail investors.  (Compl. ¶ 15; Ex. A, § 4.02(d).)

In November 2015, BCMG and REI discussed the prospect of REI purchasing a portfolio of tax liens issued by certain municipalities and counties in Ohio (the "Tax Liens").  (Compl. ¶ 15.)

REI alleges that BCMG is the parent and controlling entity of LienClear, BLOXTrade, and LienClear0001.  (Compl. ¶ 7.)  BCMG, at all times, is alleged to have acted through McOsker, who is alleged to be its Chief Executive Officer, and Byrne, who is alleged to be its Director of Operations.  (Compl. ¶¶ 10, 12.)  LienClear0001 is alleged to have sold, transferred, conveyed, and assigned to REI its right, title, and interest in the Tax Liens.  (Compl. ¶ 23; Ex. A, § 2.01.)  LienClear provided transfer services in connection with the Tax Liens purchased by REI.  (Compl. ¶ 18.)

The Complaint is devoid of any specific allegation relating to BLOXTrade; or any role played by BLOXTrade in the Transaction (defined below).

Following negotiations, REI signed agreements related to the sale, purchase, and transfer of the Tax Liens (the "Transaction"), which documents are titled, the Tax Lien Purchase and Sale Agreement (the "Sale Agreement") and the Services Agreement (the "Services Agreement").  (Compl. ¶¶ 23, 44.)

## A.    Sale Agreement

On December 22, 2015 LienClear0001 and REI executed the Sale Agreement.  (Compl. ¶ 23.)  In the Sale Agreement, LienClear0001 made the following limited representations:

(a) "The Seller, it's [sic] affiliated subsidiary, or its wholly owned subsidiary is the owner of the Tax Liens, with good and valid title thereto, and with full right to sell and transfer the same";

(b) "[T]he seller has the authority to sell the Tax Liens to Buyer";

(c) "[T]he Tax Liens will be transferred to Buyer free and clear of all encumbrances";

(d) "[T]o the Seller's knowledge the Tax Liens are validly issued under Applicable Law";

(e) "[O]nce the Purchase Price has been paid by the Buyer and delivered to the Seller in accordance with the terms hereof, the Seller shall have no further rights or claims to the Tax Liens";

(f) "Seller has the full right, power and authority, without the consent of any other person, to execute and deliver this Agreement and to perform its obligations under this Agreement and the transactions on its part contemplated hereby."

(*Id*. Ex. A, § 4.01.  The Sale Agreement expressly states that "[e]xcept as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters." (Compl. Ex. A § 4.01.)  Notably, the Sale Agreement contains no representations regarding the value or collectability of the Tax Liens, or the status of the properties underlying the Tax Liens.  Finally, the Sale Agreement expressly provides that it "contains all of the terms and conditions relating to its subject matter to which the parties have agreed.  All prior understandings of any kind are superseded by this Agreement." (Compl. Ex. A § 5.07.)

Nevertheless, REI alleges that prior to the execution of the Sale Agreement, McOsker, acting on behalf of BCMG, made representations that: (a) foreclosure actions had been initiated for all of the Tax Liens (Compl. ¶ 17.); (b) the process was near completion to acquire the properties (*Id.*); (c) "there was substantial value in the Tax Liens" (*Id.*); and (d) "all of the attorneys' fees in connection with the underlying tax liens were incurred and paid, and that the attorney(s) working on the tax liens had completed the requisite work." (Compl. ¶ 21.)

The Sale Agreement specifically contemplated that not all of the Tax Liens listed would be transferrable to REI by providing a clearly defined process to adjust the purchase price to account for any non-transferable liens.  (Compl. Ex. A, §§ 1.01, 3.02.)  The Sale Agreement defines "Excluded Tax Liens" as "[A]ny Tax Liens that Seller is unable to transfer and assign to [REI] within sixty (60) days of the Effective Date, including as a result of a redemption of any Tax Lien prior to the Effective Date."  (Compl. ¶ Ex. A, § 1.01.)  On the Closing Date, LienClear0001 was to transfer ownership of all Tax Liens (excluding any Excluded Tax Liens) to REI.  (Compl. Ex. A, § 3.02.)  Further:

> [U]pon delivery of the foregoing and certification thereof by Servicer, the Purchase Price (***as adjusted by subtracting that portion of the Purchase Price allocable to any Excluded Tax Liens*** as set forth on the Tax Lien Schedule (as applicable) and net of Seller's Brokerage Fee and Transactions Fees) shall be disbursed to Seller in accordance with the Escrow Agreement.

(Compl. Ex. A, § 3.02) (emphasis added).

REI contends that certain of the Tax Liens were either defective or otherwise non-transferrable, and seeks contractual and extra contractual remedies relating to these allegedly defective Tax Liens.  (Compl. ¶¶ 27-36.)  Specifically, REI alleges that: (a) some of the Tax Liens "covered properties on which the buildings had been completely demolished or condemned to be demolished without the possibility of reprieve" (Compl. ¶ 28.); (b) other Tax Liens were "non-transferable because they had been paid off prior to the transfer of the lien to REI, or because the property was part of a bankruptcy action prior to the transfer of the lien to REI" (Compl. ¶ 29.); (c) some Tax Liens "had expired prior to the execution of the Sale Agreement" (Compl. ¶ 30.); and (d) certain Tax Liens were being paid in installments by the property owner, decreasing the value of the lien.  (Compl. ¶ 31.)  While REI goes at length to describe the alleged failures related to the Tax Liens, it makes no mention of the reconciliation process set forth in the Sale Agreement specifically contemplated to address such grievances.

**B. Services Agreement**

On December 22, 2015, REI and LienClear executed the Services Agreement. In the Services Agreement, LienClear agreed *inter alia* to transfer the Tax Liens to REI and review the Tax Liens to "determine whether any of the Tax Liens are untransferable due to a redemption or for any other reason." (Compl. ¶¶ 44-45; 46; Ex. C, Sched. 1, ¶ 1.) As with the Sale Agreement, the Services Agreement specifically contemplates that certain Tax Liens might not be transferable. (Compl. Ex. C, Sched. 1, ¶ 1.)

<u>ARGUMENT</u>

**1. <u>Legal Standard for Motion to Dismiss for Failure to State a Claim</u>**

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss an action, in whole or in part, "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

A court is not required to accept as true legal conclusions couched as a factual allegations, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-679.

## 2.     The Complaint Alleges no Actionable Conduct by BLOXTrade or Byrne

The Complaint contains the following eight references to BLOXTrade:

- The caption;

- The introductory paragraph where BLOXTrade, LLC is defined as "BLOXTrade;"

- Paragraph 1 of the Complaint, where REI alleges that "REI is in the business of purchasing tax liens from brokers (such as BCMG's subsidiary BLOXTrade);"

- Paragraph 3 of the Complaint, where REI alleges that BLOXTrade is BCMG's brokerage arm;

- Paragraph 7 of the Complaint where REI alleges upon information and belief that BCMG is the parent and controlling entity of BLOXTrade;

- Paragraph 8 of the Complaint, where REI alleges that BLOXTrade is a Puerto Rico limited liability company whose members are McOsker and Byrne;

- Paragraph 10 of the Complaint, where REI alleges upon information and belief that LienClear001 is a special purpose entity formed to hold and transfer certain tax lien assets on behalf of BLOXTrade; and

- Paragraph 12 of the Complaint where REI alleges upon information and belief that Byrne is the Director of Sales and Business Development for New York for BLOXTrade.

The Complaint makes no other mention of BLOXTrade.

Similarly, the Complaint contains only the following seven references to Byrne:

- The caption;

- The introductory paragraph where Byrne is defined;

- Paragraph 8 of the Complaint, identifying Byrne as an alleged member of BLOXTrade;

- Paragraph 10 of the Complaint, where REI alleges upon information and belief that LienClear001 is a special purpose entity formed to hold and transfer certain tax lien assets on behalf of *inter alia* Byrne;

- Paragraph 12 of the Complaint, alleging that Byrne is an individual residing in New York, who is Director of Operations of BCMG and Director of Sales and Business Development for New York for BLOXTrade;

- Paragraph 16 of the Complaint, in which REI alleges that Byrne, on behalf of BCMG, approached REI regarding the purchase of a tax lien portfolio; and

- Paragraph 18 of the Complaint, in which REI alleges that Byrne would handle the transfers of the Tax Liens and acquisition of properties on behalf of LienClear;

The introductory paragraph of the Complaint defines BLOXTrade and Byrne as "Defendants," and REI makes various general allegations regarding the "Defendants" as an undifferentiated collective whole, however the Complaint is bereft of a single alleged action or omission specifically by BLOXTrade or Byrne on which relief may be granted.

Count I, Fraudulent Inducement, must be dismissed as to BLOXTrade and Byrne as REI fails to allege any specific conduct by either. "When alleging fraudulent behavior against a group of defendants, a plaintiff is required to separately plead the fraudulent acts of each defendant to satisfy Rule 9(b)." *MBIA Ins. Corp. v. Royal Indem. Co.*, 221 F.R.D. 419, 421 (D. Del. 2004). "Collective allegations of fraud against a group of defendants generally do not satisfy Rule 9(b) because the Rule is intended to ensure that each defendant has adequate notice of the charges against it, thereby permitting each defendant to mount a defense and not just deny that they did anything wrong." *Id.*

Counts II, III and V seek no relief against Defendants BLOXTrade nor Byrne, neither of whom is alleged to be a party to any contract identified in Counts II, III and V.

Count IV for civil conspiracy must be dismissed due to REI's failure to allege any act by BLOXTrade or Byrne in furtherance of a conspiracy. "Under Delaware law, the elements of a conspiracy claim are: "(1) [a] confederation or combination of two or more persons; (2)[a]n unlawful act done in furtherance of the conspiracy; and (3)[a]ctual damage." *In re Am. Bus. Fin. Servs., Inc.*, 361 B.R. 747, 762 (Bankr. D. Del. 2007) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987); *Ramunno v. Cawley,* 705 A.2d 1029, 1039 (Del.Super.Ct. 1998) (explaining that a "civil conspiracy is not an independent cause of action in Delaware, and that it must arise

from some underlying wrong."); *Kalmanovitz v. G. Heileman Brewing Co.,* 595 F.Supp. 1385, 1401 (D.Del.1984) ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.").  REI's conspiracy claim against BLOXTrade and Byrne must also be dismissed for the additional reasons set forth below prohibiting a claim for conspiracy among related corporate parties and their agents.

Finally, Count VI for unjust enrichment makes no allegation against BLOXTrade or Byrne, other than the generalized allegation that "the Defendants" directly and indirectly received benefits and enrichment flowing from the misconduct by Defendants described herein."

### 3.  Count I (Fraud in the Inducement) Fails to State a Claim

REI's claim for fraud in the inducement based on alleged pre –contract representations fails as a matter of law due to (a) the presence of enforceable integration clauses in the contracts; (b) REI's failure to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b); (c) REI's failure to implicate duties separate and apart from the contracts; and (d) REI's failure to allege misrepresentations upon which it could justifiably rely.

### i.  Count I (Fraud in the Inducement) is Barred by Enforceable Integration Clauses

"Delaware law enforces clauses that identify the specific information on which a party has relied and which foreclose reliance on other information." *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015)(citing *RAA Mgmt., LLC v. Savage Sports Hldgs., Inc.*, 45 A.3d 107, 118-19 (Del. 2012)).  "[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other

representations' fraudulent inducement claim.'" *Prairie Capital III, L.P.*, 132 A.3d at 50 (citing *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006)(Strine, V.C.)).

Here, each of the Sale Agreement and the Services Agreement contains an enforceable integration clause. The Sale Agreement provides that: "Except as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters." (Compl. Ex. A § 4.01.) The Services Agreement provides that: (a) "Except as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters;" (Compl. Ex. C § 4.01) and (b) "This Agreement contains all of the terms and conditions relating to its subject matter to which the parties have agreed. All prior understandings of any kind are superseded by this Agreement." (Compl. Ex. C § 5.08.)

ii.    Count I (Fraud in the Inducement) is not Pled with Sufficient Particularity

Even if the integration clauses are deemed insufficient, the claims must still be dismissed as when fraud is alleged, Fed. R. Civ. P. 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud." Rule 9(b) requires plaintiffs put defendants on notice of the "precise misconduct with which they are charged." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 516–17 (D. Del. 2010) (citing *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Courts often look to allegations of "date, place, or time" to fulfill the requirements of Rule 9(b). *Id.*

Under Delaware law a plaintiff must allege with particularity the following elements to state a fraud in the inducement claim: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable

reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *El v. Davis*, No. CIV.A. 12-1580-GMS, 2013 WL 1914233, at *2 (D. Del. May 7, 2013).

Here, the facts alleged by REI in support of its fraud in the inducement claim are asserted in conclusory fashion against all Defendants. This fails to satisfy the pleading requirement with respect to each any single defendant. REI alleges that the Defendants: (a) "knew that the value of the Tax Liens was significantly less than was represented to REI;" (b) "knew that the Tax Liens suffered from a variety of defects;" (c) "intentionally concealed the defects;" (d) "knew or should have known that REI would rely on information actually provided to REI;" (e) "intended for REI to overpay for the Tax Liens;" (f) "conspired to represent to REI that the Tax Liens would generate significant profits;" (g) "represented to REI that the total redemptive value of the Tax Liens was $2,508,318.32;" and (h) "knew that there were significant problems with the Tax Liens prior to the sale [] to REI". (Compl. ¶¶ 26, 35, 56-61.) Pleading general conclusory allegations against all Defendants is inconsistent with Rule 9(b)'s particularity requirements. Indeed, it fails to identify the most basic information as to who allegedly made the fraudulent misrepresentations or omissions. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1421 (3d Cir. 1997) (noting that Fed. R. Civ. P. 9(b) requires a plaintiff to plead "who, what, when, where, and how" in order to establish a claim for fraud).

Even where REI identifies a particular defendant, its allegations are still too general and conclusory. For example:

- "McOsker told REI that foreclosure actions had been initiated for all of the Tax Liens and the process was near completion to acquire the properties." (Compl. ¶ 17.)

- "McOsker further assured REI that there was substantial value in the Tax Liens and the properties subject thereto." (*Id.*)

- "McOsker represented that all of the attorneys' fees in connection with the underlying tax liens were incurred and paid, and that the attorney(s) working on the tax liens had completed the requisite work." (Compl. ¶ 21.)

Indeed, REI does not plead any of the above allegations with particularity. Moreover these allegations do not indicate the time or location of the statements allegedly made by McOsker or to whom at REI the statements were allegedly made.

Finally, REI specifically represented in the Sales Agreement that it is "a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith." Certainly, a sophisticated party who has not only represented such in the governing contract but also makes similar representations to the public (and its clients) cannot now claim justifiable reliance on a party who was a mere intermediary and/or transfer facilitator in this transaction (for instance, REI touts on its website that "With REI Holdings experience, systems, and connections, there has never been a safer place to buy tax lien certificates" (https://rei-holdings.com/category/blog/).

    iii.    Count I (Fraud in the Inducement) does not Implicate Duties Separate and Apart from the Contracts

"[I]n order for contract and tort claims to co-exist in an action, the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract." *Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007). "Allegations of fraud that go directly to the inducement of the contract, rather than its performance, would present a viable claim." *Id.* "Delaware law holds that a plaintiff cannot bootstrap a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Narrowstep, Inc. v. Onstream Media Corp.*, No. CIV.A. 5114-VCP, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010)(internal quotations omitted). Mere allegations of misrepresentations of future intent are insufficient to support a

claim for fraud. *MicroStrategy, Inc. v. Acacia Research Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010).

Here, the generalized allegations against the Defendants do not implicate duties separate and apart from the contract. Allegations that McOsker stated (a) the foreclosure actions were near completion [Compl. ¶ 17.]; (b) there was substantial value in the Tax Liens [*Id.*]; and (c) the attorneys had almost completed the work on the underlying liens [*Id.* ¶ 21.] all implicate contractual duties. Nothing alleged by Plaintiff implicates a collateral duty separate and apart from the Sales and Services Agreements. Instead, Plaintiff has attempted to bootstrap his breach of contract claims into claims for fraud in the hope that it can expand its possible recovery.

    iv.    <u>REI was not Justified in Relying on the Alleged Misrepresentations</u>

When pleading fraud, a sophisticated party cannot justifiably rely on facts for which it failed to conduct adequate due diligence before entering into the transaction. *Debakey Corp. v. Raytheon Serv. Co.,* No. 14947, 2000 WL 1273317, at *26-28 (Del. Ch. Aug. 25, 2000); *see also VGS, Inc. v. Castiel*, No. Civ.A. 17995, 2004 WL 876032, at *6 (De. Ch. Apr. 22, 2004).

Here, REI is clearly a sophisticated party. (*See* Compl. ¶ 1) (REI "is in the business of purchasing tax liens from brokers and then reselling those tax liens to investors."); (Comp. at ¶ 15) ("REI is in the business of purchasing portfolios of tax liens and tax lien certificates issued by municipalities across the United States, and then reselling those tax lien certificates to investors."); (Compl at Ex. A, § 4.02(d)) ("[REI] is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith."). As a sophisticated party, REI cannot justifiably rely on factual assertions by the Defendants concerning matters which it could have corroborated through the completion of adequate due diligence. REI, as a sophisticated party, could have (a) verified the status of foreclosure actions; (b) conducted its own valuation of the Tax Liens and underlying properties; and (c) evaluated the

progress of the legal work connected to the underlying liens. Instead, REI seeks to use this Court to free it from the bargains it negotiated at arms-length. Delaware law does not permit such a result.

Accordingly, Count I should be dismissed as to all Defendants.

4. **Count II (Breach of Contract Against LienClear0001 – Sale Agreement) Fails to State a Claim**

REI's claim for breach of contract against LienClear0001 is based on the assertion that LienClear001 breached Section 4.01 of the Sale Agreement by selling defective tax liens to REI. Count II fails as a matter of law because REI has not alleged facts supporting a breach of the Sale Agreement.

"Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.), aff'd, 886 A.2d 1278 (Del. 2005).

In Section 4.01 of the Sale Agreement, titled "Seller's Limited Representations," LienClear0001 made certain <u>limited</u> representations to REI. (*See* Compl. Ex. A § 4.01.) These limited representations include only the following:

    (a) The Seller . . ."is the owner of the Tax Liens, with good and valid title thereto, and with full right to sell and transfer the same";

    (b) "[T]he seller has the authority to sell the Tax Liens to Buyer";

    (c) "[T]he Tax Liens will be transferred to Buyer free and clear of all encumbrances";

    (d) "[T]o the Seller's knowledge the Tax Liens are validly issued under Applicable Law";

    (e) "[O]nce the Purchase Price has been paid by the Buyer and delivered to the Seller in accordance with the terms hereof, the Seller shall have no further rights or claims to the Tax Liens";

    (f) "[T]he Seller intends to convey to the Buyer legal title to all of the Tax Liens; and

(g)   "Seller has the full right, power and authority, without the consent of any other person, to execute and deliver this Agreement and to perform its obligations under this Agreement and the transactions on its part contemplated hereby."

(*Id.*)  The Sale Agreement also provides in § 4.01 that "[e]xcept as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters." (Compl. Ex. A § 4.01.)

REI does not allege that LienClear0001 breached any of these limited representations. Instead, REI alleges that LienClear0001 somehow breached Section 4.01 of the Sale Agreement by selling REI "defective Tax Liens."  (Compl. ¶ 69.)  Presumably the defects referenced in ¶ 69 of the Complaint are those asserted elsewhere in the Complaint, i.e. that: (i) certain Tax Liens covered properties on which the buildings had been demolished or condemned; (ii) certain Tax Liens had been paid off by the property owner or the property was part of a bankruptcy action; (iii) certain Tax Liens had expired prior to the execution of the Sale Agreement; (iv) certain tax liens were being paid in installments by the property owner; and (v) certain Tax Liens were never transferred to REI.  (Compl. ¶¶ 28-31, 34.)  While these alleged deficiencies might impact the value of a given tax lien, none would, if true, constitute a breach of any of the representations set forth in § 4.01 of the Sale Agreement.

Furthermore, to the extent a Tax Lien was not able to be transferred, the Sale Agreement explicitly contemplated and accounted for such circumstance by providing for an adjustment of the purchase price.  Therefore, even if specific Tax Liens were determined to be non-transferrable, that might give rise to a contractual right to a purchase price adjustment, but does not constitute a breach of a representation or warranty or a breach of the Sale Agreement.  (*See* Compl. Ex. A, §§ 1.01 – "Excluded Tax Liens"; 3.02 – Closing).  The Sale Agreement specifically acknowledges and contemplates the possibility that not all of the Tax Liens sold would be transferable, and expressly defines the term "Excluded Tax Liens" as "any Tax Liens

that Seller is unable to transfer and assign to Buyer within sixty (60) days of the Effective Date, including as a result of a redemption of any Tax Lien prior to the Effective Date." (Compl. Ex. A, § 1.01.) The Sale Agreement provided that on the Closing Date, the Purchase Price would be adjusted by "subtracting that portion of the Purchase Price *allocable to any Excluded Tax Liens* as set forth on the Tax Lien Schedule (as applicable)." (Compl. Ex. A, § 3.02.) (emphasis added).

The Complaint does not allege that LienClear0001 breached any provision of the Sale Agreement. Instead, REI merely complains that certain Tax Liens were "defective". (Compl. ¶ 69.) The existence of a "defective" tax lien does not constitute a breach of the Sale Agreement, and therefore Count II of the Complaint must be dismissed.

## 5.    Count IV (Civil Conspiracy) Fails to State a Claim

REI asserts a claim for civil conspiracy based upon an alleged conspiracy between the collective group of defendants, which is comprised exclusively of entities which REI alleges share parent/subsidiary relationships with one another, and two individuals whom REI alleges are agents of one or more of the entity defendants, acting on behalf of such entity defendant(s). As a matter of Delaware law, such a combination of related entities and their agents cannot conspire amongst themselves, and therefore Count IV must be dismissed.

REI alleges that BCMG is the sole member and parent company of Defendants LienClear, LienClear0001, and BLOXTrade. (Compl. ¶¶ 7-10.) REI further alleges that McOsker is the CEO of BCMG. (Compl. ¶ 7.) REI alleges that Byrne is the Director of Operations of BCMG and is BLOXTrade's Director of Sales and Business Development for New York. (Compl. ¶ 12.) Finally, REI alleges that McOsker and Byrne acted "on behalf of BCMG." (Compl. ¶ 16.)

The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc*., 871 A.2d 428, 437 (Del. 2005). "It is well-settled that a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility. *Sample v. Morgan*, 935 A.2d 1046, 1065 (Del. Ch. 2007) (citing *Superior Court Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv. Inc*., 2004 WL 877599, at *11 (R.I. Super. 2004)). "[A] parent corporation cannot conspire with . . . a subsidiary." *In re Asbestos Litig*., 509 A.2d 1116, 1120 (Del. Super. Ct. 1986), aff'd sub nom. *Nicolet, Inc.* (citing *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, *** (1984); *John Peterson Motors, Inc. v. General Motors Corp*., 613 F.Supp. 887 (D. Minn. 1985)).

REI alleges that each of the entity defendants is affiliated with each of the other entity defendants, with BCMG as the parent company. As such, the entity defendants cannot, as a matter of law, conspire with one other. *See In re Asbestos Litig*., 509 A.2d at 1120. Similarly, REI alleges that McOsker and Byrne are officers and agents of BCMG, and therefore cannot conspire with one another or BCMG. *See Sample v. Morgan*, 935 A.2d at 1065. As a result, the Complaint fails to state a claim for civil conspiracy.

6.    <u>**Count V (Breach of the Implied Covenant of Good Faith and Fair Dealing) Fails to State a Claim**</u>

REI asserts that "[t]o the extent the express provisions of the Sale Agreement and/or Servicing Agreement do not address LienClear001's conduct, LienClear001 breached the implied covenant of good faith and fair dealing . . . [by failing to live up to REI's expectation that] LienClear001 would be providing Tax Liens with redemptive values in excess of the purchase price and that the attorneys' fees paid by REI were in fact collectible by the holders of

the Tax Liens." *See* Complaint at ¶¶ 82-83. REI further asserts that if it "had known that attorneys' fees were not collectible without additional documentation . . . [it] would have demanded that documentation prior to closing or would have paid a maximum of $2,500 per tax lien . . . [and if it] had known that the Tax Liens were not collectible and the redemptive values were less than the purchase price, [it] should have negotiated a lower price [or] not have executed the Sale Agreement or the Servicing Agreement . . . ." Complaint at ¶¶ 82-84.

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff. *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329–30 (D. Del. 2014) (citing *Anderson v. Wachovia Mtg. Corp.*, 497 F.Supp.2d 572, 581–82 (D.Del. 2007)). "Obligations based on the covenant of good faith and fair dealing should be implied only in rare instances." *Id.* "[T]he implied covenant does not apply when the subject at issue is expressly covered by the contract." *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 20 (Del. Ch. 2009) (citing *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14, 23 (Del.Ch.1992)). "[I]t is not the job a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not." *DeLucca v. KKAT Mgmt., L.L.C.*, No. Civ.A. 1384-N, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

REI's allegations in support of Count V amount to nothing more than a re-hash of the allegations in support of its claim in Count I for fraud in the inducement, i.e. that it was somehow misled by pre-contract statements, notwithstanding clear contractual disclaimers of any representations or warranties not contained in the contracts themselves. REI's re-titling and re-assertion of its fraud in the inducement claim as an implied covenant of good faith and fair dealing claim does not imbue the claim with any additional vitality.

REI is a self-described sophisticated market participant, well aware of the potential issues and risks involved in purchasing tax lien certificates, and is therefore precluded from reliance on the implied covenant of good faith and fair dealing to re-write its contracts. (*See* Compl. ¶ 1) (REI "is in the business of purchasing tax liens from brokers and then reselling those tax liens to investors."); (Comp. at ¶ 15) ("REI is in the business of purchasing portfolios of tax liens and tax lien certificates issued by municipalities across the United States, and then reselling those tax lien certificates to investors."); (Compl at Ex. A, § 4.02(d)) ("[REI] is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith.").

REI has failed to identify any implied contractual term it contends was breached. The terms identified by plaintiff of which it complains, purchase price, representations and warranties, are all expressly covered by the parties' contracts, and therefore REI is not entitled to have this Court re-write those terms.

**7.      Count VI (Unjust Enrichment) Fails to State a Claim**

REI's claim for unjust enrichment fails as a matter of law because express, enforceable contracts control the parties' relationship.

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). "Delaware courts ... have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract." *Air Prod. & Chemicals, Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 216 (D. Del. 2017) (citing *Nemec v. Shrader*, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009), *aff'd*, 991 A.2d 1120 (Del.

2010); *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *19 (Del. Ch. Sept. 18, 2014) ("This Court routinely dismisses unjust enrichment claims that are premised on an express, enforceable contract that controls the parties' relationship because damages is an available remedy at law for breach of contract.")).

Here, REI's claims are based upon express, enforceable contracts, the Sale Agreement and the Services Agreement. While REI asserts a claim for fraud in the inducement based on alleged pre-contract representations, REI does not seek rescission of either of the agreements. Even if rescission were sought, such a claim would fail as a matter of law because each contract expressly excludes any prior representations and warranties, and contains an integration clause. The presence of express and enforceable contracts governing the parties' relationship bars REI's claim for unjust enrichment.

## CONCLUSION

For the foregoing reasons, Defendants, LienClear – 0001, LLC, BCMG, LLC, BLOXTrade, LLC, LienClear, LLC, Thomas McOsker, and Donald Byrne, respectfully request that this court grant their Motion and dismiss the Complaint filed by REI Holdings, LLC, in its entirety with prejudice for failure to state a claim.

Dated: October 30, 2018        LECLAIRRYAN, PLLC

                              */s/ Andrew L. Cole*
                              Andrew L. Cole (No. 5712)
                              800 North King Street, Suite 303
                              Wilmington, DE 19801 US
                              (302) 394-6817
                              andrew.cole@leclairryan.com

                              Counsel for Defendants