IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REI HOLDINGS, LLC,                            )
                                              )
                    Plaintiff,                )
                                              )
          v.                                  )      No. 18-1401 (MN)
                                              )
LIENCLEAR – 0001, LLC, MCMG, LLC,             )
BLOXTrade, LLC, LIENCLEAR, LLC,               )
THOMAS MCOSKER, and DONALD                    )
BYRNE,                                        )
                                              )
                    Defendants.               )

## <u>MEMORANDUM OPINION</u>

Joseph B. Cicero, Gregory E. Stuhlman, Stephanie H. Dallaire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE – Attorneys for Plaintiff

Andrew L. Cole, LECLAIRRYAN, PLLC, Wilmington, DE – Attorneys for Defendants.

August 5, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants LienClear – 0001, LLC ("LienClear0001"),[1] LienClear, LLC ("LienClear"), BCMG, LLC ("BCMG"), BLOXTrade, LLC ("BLOXTrade"), Thomas McOsker ("McOsker"), and Donald Byrne ("Byrne") (collectively, "Defendants") (D.I. 15), asserting that the Amended Complaint (D.I. 13) filed by Plaintiff REI Holdings, LLC ("REI" or "Plaintiff") fails to state a claim with respect to Counts I, II, IV, V, VI, and VII and fails to state a claim against BLOXTrade with respect to all claims. For the reasons set forth below, Defendants' motion to dismiss the Amended Complaint will be GRANTED-IN-PART and DENIED-IN PART.

## I.    BACKGROUND

REI is in the business of purchasing and reselling tax lien portfolios. (D.I. 13 ¶¶ 1, 21). According to the Amended Complaint, "Defendants are a part of an elaborate enterprise of purchasing and securitizing tax lien assets in order to broker sales and sell tax lien portfolios to buyers throughout the United States and Puerto Rico, and to service the sale of these portfolios to buyers." (*Id.* ¶ 3). Plaintiff alleges that in November of 2015, McOsker and Byrne, on behalf of BCMG, approached REI about purchasing a portfolio of certain Ohio tax liens ("the Tax Liens"). (*Id.* ¶ 22). McOsker informed Plaintiff that foreclosure actions had been commenced for all the Tax Liens and assured Plaintiff "that there was substantial value in the Tax Liens and the properties subject thereto." (*Id.* ¶ 23). "On November 9, 2015, McOsker informed REI that the transfers of the Tax Liens, and the acquisition and servicing of properties resulting therefrom, would be handled by Byrne through LienClear" and another person. (*Id.* ¶ 24). The next day, a vice

---

[1]    In the briefing, parties refer to Defendant LienClear – 0001, LLC both as "LienClear0001" and "LienClear001." The Court generally will use "LienClear0001," though "LienClear001" may be used when quoting from the briefing.

president for BCMG shared a spreadsheet with Plaintiff detailing certain tax liens. (*Id.* ¶ 25). This spreadsheet was later modified to identify "approximately 383 [Tax Liens] with a purported redemptive value of $1,893,437.07 and recoverable attorney's fees in the amount of $614,881.35." (*Id.* ¶ 26). On December 22, 2015, LienClear0001 and REI entered into a Tax Lien Purchase and Sale Agreement ("Sale Agreement"). (*Id.* ¶ 29, Ex. B). Under the Sale Agreement, Plaintiff purchased the Tax Liens for $1,921,997.16, which included the costs of brokerage, escrow, and other transaction and service fees. (*Id.*). The Sale Agreement states, in pertinent part:

> The Tax Lien Purchase Agreement (this "Agreement") is made as of 12-22-2015 (the "Effective Date") by and among LienClear – 0001, LLC (the "Seller") and REI Holdings (the "Buyer").
>
>         *     *     *
>
> Section 3.02. Closing.   The "Closing Date" with respect to the purchase and sale of the Tax Liens shall be the date on which ownership of all Tax Liens (excluding and Excluded Tax Liens[2], as applicable) has been transferred to Buyer through the execution, endorsement, delivery and filing of all applicable documents and certificates as is required by the applicable taxing authority and under Applicable Laws as such is certified by Servicer in accordance with the Servicing Agreement. Upon delivery of the foregoing and certification thereof by Servicer, the Purchase Price (as adjusted by subtracting that portion of the Purchase Price allocable to any Excluded Tax Liens as set forth on the Tax Lien Schedule (as applicable) and net of Seller's Brokerage Fee and Transaction Fees) shall be disbursed to Seller . . . .
>
> Section 3.03 Collections Received On or After the Effective Date. To the extent Seller receives any Collections in respect of the Tax Liens on or after the Effective Date, Seller shall hold such amounts in trust for the Buyer.
>
>         *     *     *

---

[2]     "Excluded Tax Liens" are defined in the agreement as "any Tax Liens that Seller is unable to transfer and assign to Buyer within sixty (60) days of the Effective Date, including as a result of a redemption of any Tax Lien prior to the Effective Date."

Section 3.05 <u>Assurance of Further Action</u>. From time to time after the Closing Date and without further consideration, each of the parties to this Agreement shall execute and deliver, or cause to be executed and delivered, such further instruments and agreements, and shall take such other actions, as any other party may reasonably request in order to more effectively effectuate the transactions contemplated by this Agreement.

\*   \*   \*

Section 4.01. <u>Seller's Limited Representations</u>. Seller hereby represents and warrants that:
(a) the Seller, it's [sic] affiliated subsidiary, or its wholly owned subsidiary is the owner of the Tax Liens, with good and valid title thereto, and with full right to sell and transfer the same;
(b) the Seller has the authority to sell the Tax Liens to Buyer;
(c) the Tax Liens will be transferred to Buyer free and clear of all encumbrances;
(d) to the Seller's knowledge the Tax Liens are validly issued under Applicable Law;

\*   \*   \*

Section 5.07. <u>Merger and Integration</u>. This agreement contains all of the terms and conditions relating to its subject matter to which the parties have agreed. All prior understandings of any kind are superseded by this Agreement.
\*\*\*
(e) once the Purchase Price has been paid by the Buyer and delivered to the Seller in accordance with the terms hereof, the Seller shall have no further rights or claims to the Tax Liens;
(f) the Seller intends to convey to the Buyer legal title to all of the Tax Liens;
(g) Seller has the full right, power and authority, without the consent of any other persons, to execute and deliver this Agreement and to perform its obligations under this Agreement and the transactions on its part contemplated hereby.

(D.I. 13, Ex. B).  Attached to the Sale Agreement, as Schedule 1, was a chart listing each of the 383 Tax Liens and a representation of the redemptive value thereof.  (D.I. 13 ¶ 34).  Plaintiff alleges that total redemptive value of the Tax Liens in Schedule 1 was $2,508,318.42.  (D.I. 13

¶ 26).   REI, LienClear, and LienClear0001 also executed a Servicing Agreement ("Servicing Agreement").  (D.I. 13, Ex. D).  The Servicing Agreement states, in pertinent part:

> **THIS SERVICES AGREEMENT** (this "<u>Agreement</u>") is made this 12-22-2015 ("Date"), by and among LienClear – 00001, LLC (the "<u>Seller</u>"), REI Holdings (the "<u>Buyer</u>") LienClear, LLC ("Servicer").
>
> \*   \*   \*
>
> 1. **Services**. Servicer shall provide the services to Buyer and Seller as set forth on <u>Exhibit A</u> hereto (the "<u>Services</u>") in accordance with the Agreement.
>
> \*   \*   \*
>
> 21. **Authority to Execute**. Each person executing this Agreement represents and warrants that it is duly authorized to execute this Agreement by the party on whose behalf it is so executing.
>
> \*   \*   \*
>
> <u>**SCHEDULE 1**</u>
> <u>**TAX LIENS**</u>
> {Attached}
> <u>**EXHIBIT A**</u>
>
> <u>**Services**</u>
> Servicer shall take all actions and execute and deliver, or oversee the execution and delivery of, all documents and certificates necessary to effectuate the transfer of ownership of the Tax Liens (except for Excluded Tax Liens (as defined herein)) from Seller to Buyer, including without limitation:
>
> 1. Review the list of Tax Liens to determine whether any of the Tax Liens are untransferable due to a redemption or for any other reason (such untransferable Tax Liens are referred to herein as the "<u>Excluded Tax Liens</u>").
>
> \*   \*   \*
>
> 5. Take such other actions as reasonably requested by Buyer or Seller to further effectuate the completion of the Transaction.

(*Id.*).  Following the execution of the agreements, REI began to sell the Tax Liens to its customers. (D.I. 13 ¶ 37).  At that point, "REI began to learn that many of the Tax Liens sold to it were worthless, and others were worth far less than had been represented by LienClear, BCMG and McOsker."  (*Id.* ¶ 37).  Plaintiff alleges that: (1) certain of the Tax Liens covered properties on which the buildings had been demolished or condemned to be demolished; (2) liens had already been paid prior to the transfer or the property was party of a bankruptcy action; (3) liens had expired prior to the execution of the Agreements or the liens were being paid in installments by a property owner prior to execution so the total was reduced; (4) liens were not properly handled by BCMG and/or LienClear prior to transfer, or (5) some liens were never transferred at all.  (*Id.* ¶¶ 38-42, 44).  Plaintiff alleges that REI knew of these problems prior to the sale to REI.  (*Id.* ¶ 45).

The Amended Complaint alleges that following the discovery of problems with the Tax Liens, REI contacted McOsker.  He informed REI that he would approach the seller and work out a refund for the problematic liens and promised "that REI would get its attorney's fee back"  (*Id.* ¶ 47).  Plaintiff alleges that McOsker stated that the seller was unable to provide a refund, but could transfer additional tax liens.  (*Id.* ¶ 48).  According to the Amended Complaint, "[o]n or about October 25, 2016, LienClear and LienClear0001 proposed to enter into a second Tax Lien and Purchase Agreement" under which "LienClear0001 would provide to REI additional, replacement tax liens."  (*Id.* ¶ 49).  REI alleges that it, "at significant cost, researched certain of the proposed Replacement Tax Liens and discovered that the Replacement Tax Liens were riddled with the same types of problems as the original Tax Liens."  (*Id.* ¶ 51).  The "Proposed Replacement Lien Agreement" was never executed.  (*Id.* ¶ 52).  The Amended Complaint asserts that McOsker "continually assured REI that he would remedy all problems and 'make it right' with

REI," but later stated "that REI would have to sue Defendants to obtain any recovery against Defendants." (*Id.* ¶¶ 52-53).

Finally, the Amended Complaint alleges that LienClear and Donald Byrne "failed to review any of the Tax Liens to determine if any were not able to be transferred or were otherwise defective," "failed to review any of the Tax Liens to determine if there were defects, deficiencies, or other issues that impeded or precluded LienClear or Byrne from providing any or all of the Services under the Servicing Agreement, including the identification of Excluded Tax Liens," and if such review did occur, "did not inform REI that any Tax Liens were defective or should be categorized as Excluded Tax Liens." (*Id.* ¶¶ 63-65).

On September 10, 2018, REI filed a Complaint against Defendants. (D.I. 1). In response, on October 30, 2018, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). (D.I. 5). Plaintiff filed its Amended Complaint on November 20, 2018. (D.I. 13). The Amended Complaint raises claims of: fraud in the inducement (Count I); breach of contract by LienClear0001 (Count II); breach of contract by LienClear (Count III); breach of contract against Byrne (Count IV); civil conspiracy (Count V); breach of implied covenant of good faith and fair dealing (Count VI); and unjust enrichment (Count VII). (*Id.*). On December 7, 2018, Defendant again moved to dismiss pursuant to Rule 12(b)(6). (D.I. 15).

## II.    **LEGAL STANDARD**

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the

complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III. <u>DISCUSSION</u>

### A. <u>BLOXTrade</u>

Defendants argue that the Amended Complaint must be dismissed as to BLOXTrade because while it makes eleven references to the company, those references are "bereft of any alleged action or omission specifically by BLOXTrade." (D.I. 16 at 6-7). In its response, Plaintiff does not dispute that. The Court agrees with Defendants. The Amended Complaint does not make

specific allegations against Defendant BLOXTrade. Accordingly, the Court will grant Defendants' motion to dismiss BLOXTrade.

### B.    Count I (Fraud in the Inducement)

In Count I Plaintiffs assert fraud in the inducement. Defendants argue that Plaintiff's fraud in the inducement claim must be dismissed because it is (1) barred by enforceable integration clauses, and (2) it is not pleaded with sufficient particularity. (D.I. 16 at 8-10).

#### 1.    Integration Clause

As to the integration clause, Delaware courts have found that "a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim.'" *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015) (citing *Abry Partners V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006)).

Defendants argue that "both the Sale Agreement and the Services Agreement contain enforceable integration clauses" because the Sale Agreement states "[e]xcept as expressly set forth above, Seller makes no representations or warranties with respect to the Tax Liens or any other matters" and the Services Agreement provides "[t]his Agreement, together with the addendum and exhibits attached hereto and thereto, contains all of the terms and conditions agreed upon by the parties hereto with reference to the subject matter hereof and supersedes all prior agreements and negotiations with respect to the subject matter hereof . . . ." (D.I. 8 16 at 8). In *Abry Partners V*, however, then-Vice Chancellor Strine noted that Delaware courts "have not given effect to so-called merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra contractual statements" and "murky integration clauses, or standard integration clauses

without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations." 891 A.2d 1032, 1058-59 (Del. Ch. 2006) (citing *Kronenberg v. Katz*, 872 A.2d 568, 591-93 (Del. Ch. 2004), *aff'd*, 867 A.2d 902 (Del. 2005)).

Here, neither the Sale Agreement nor the Services Agreement includes explicit anti-reliance language with respect to the Plaintiff. Though Defendants highlight language stating that "Seller makes no representations or warranties with respect to the Tax Liens or any other matters," Delaware courts have dismissed such language when being used against a fraudulent inducement claim by a buyer. See *Anvil Hldg. Corp. v. Iron Acquisition Co., Inc.*, No. 7975 (VCP), 2013 WL 2249655 at *8 (Del. Ch. May 17, 2013); *FdG Logistics LLC v. A&R Logistics Holdings, Inc*., 131 A.3d 842, 859 (Del. Ch. 2016), *aff'd sub nom. A & R Logistics Holdings, Inc. v. FdG Logistics LLC*, 148 A.3d 1171 (Del. 2016). In *Anvil Holding*, a buyer asserted fraud claims based on extra-contractual statements where a purchase agreement stated that neither the target company nor any other seller "makes any other express or implied representation or warranty with respect to the Company" and that the agreement "constitutes the entire Agreement among the Parties." 2013 WL 2249655 at 8. The court refused to dismiss the fraud claims, reasoning that provisions were not expressed by the buyer, and could not "reflect a clear promise by the Buyer that it was not relying on statements made to it outside of the Agreement to make its decision to enter into the Agreement." *Id.* The agreements here also do not include an affirmative anti-reliance disclaimer from buyer REI. Accordingly, the Court cannot find at this stage that Count I is barred by a clear, enforceable integration clause.

### 2. Pleading With Particularity

As to Defendants' assertions that the fraud in the inducement claim has not been pleaded with sufficient particularity, it is clear that "[u]nder Delaware law, the elements of fraudulent

inducement and fraud are the same." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018). Those elements are: (1) a false representation or omission of fact that defendant had a duty to disclose; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *FdG Logistics*, 131 A.3d at 857; *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999).

Because Count I alleges fraud, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake." In other words, the complaint must provide "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *Whatley*, 657 F. App'x at 93 (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). "Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time" but requires "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller*, 311 F.3d at 216 (internal quotations omitted) (citing *In re Nice Systems, Ltd. Securities Litigation*, 135 F.Supp.2d 551, 577 (D.N.J. 2001)).

Here, Defendants contend that "REI simply alleges facts in conclusory fashion against all Defendants, failing to satisfy the pleading requirement with respect to any single defendant." (D.I. 16 at 9). In response, Plaintiff argues that "at the heart of REI's fraudulent inducement claim . . . is a fraud by non-disclosure based on Defendants' concealment of the defects in the Tax Liens." (D.I. 17 at 14). Specifically, Plaintiff contends that Defendants: (1) "did not disclose that certain Tax Liens covered properties on which the buildings had been completely demolished or condemned to be demolished without the possibility of reprieve;" (2) "did not disclose that certain Tax Liens were non-transferable;" (3) "did not disclose that certain Tax Liens had expired and were worthless;" and (4) "did not disclose that certain Tax Liens were being paid in installments by the property owner, diminishing their value." (D.I. 17 at 15).

Plaintiff, however, has not sufficiently pleaded that each of the Defendants had a duty to disclose these allegedly omitted facts. Count I of the Amended Complaint includes no allegation that Defendants owed a duty to disclose the allegedly concealed facts listed above. Instead, Plaintiff states only that LienClear, the Servicer, "was required to notify REI of any defects in the Tax Liens, but did not." (D.I. 17 at 15). Specifically, Plaintiff points to Section 4(e) of the Servicing Agreement, which states "Servicer promptly shall notify the company of any defects, deficiencies or other issues that impede or preclude Servicer from providing any or all of the Services. Servicer represents that it has investigated the conditions necessary to provide the Services . . . ." (D.I. 13, Ex. D). At best, this would suggest that *only* LienClear had a duty to disclose the allegedly omitted facts to REI. Under the heightened pleading standard of Rule 9(b), however, a complaint is not sufficient where a plaintiff bundles together all defendants under a claim of fraud and omits specific allegations regarding who had a duty to disclose and who breached such a duty. Here, Plaintiff has not supplied alternative means of injecting precision and

some measure of substantiation into its allegations of fraudulent inducement. Count I will be dismissed for want of particularity with respect to which Defendant(s) owed and breached a duty to Plaintiff.

### C.  Count II (Break of Contract Against LienClear0001 – Sale Agreement)

Defendants argue that REI has failed to plead a plausible claim for breach of contract because: (1) the Sale Agreement "contains no representation or warranty regarding the redemptive values of the Tax Liens, or with respect to any of the other alleged 'defects' asserted by REI;" (2) "[t]o the extent LienClear0001 was unable to convey clear title to a particular lien, that lien constituted an 'Excluded Tax Lien' pursuant to Section 1.01 of the Sale Agreement" and is not a breach, but instead "triggers the contractually specified procedure for dealing with Excluded Tax Liens;" and (3) "REI alleges no facts suggesting that LienClear0001 was obligated to perform services pursuant to the Services Agreement."  (D.I. 17 at 11-12).

To survive a motion to dismiss for failure to state a breach of contract claim, Plaintiff must establish: (1) existence of a contract; (2) breach of an obligation imposed by that contract; and (3) damages incurred as a result of the breach.  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Here, there is no dispute that a valid agreement exists between REI and LienClear0001 in the Sale Agreement.  Instead, the parties disagree about what specific obligations that agreement sets forth.  REI alleges that LienClear001 breached its obligations: (1) "to sell to REI Tax Liens with specific redemptive value set forth by LienClear001 in Schedule 1 to the Sale Agreement;" (2) by representing and warranting "that (a) it owned and held title to the Tax Liens, (b) the Tax Liens would be transferred to REI free and clear, (c) the Tax Liens were validly issued, and (d) legal title to the Tax Liens would be passed to REI," and yet selling REI defective liens; (3) to cure breaches of Section 4.01 of the Sale Agreement as required by Section

4.03 of the Sale Agreement; (4) "to take actions necessary to effectuate the transactions contemplated by the Sale Agreement;" and, (5) "to deduct from the purchase price paid by REI amounts attributable to Excluded Tax Liens." (*Id.* ¶¶ 81-86).

At the motion to dismiss stage, the Court must take all well pleaded facts as true. Here, Plaintiff alleges sufficient facts such that dismissal would be improper. First, REI contends that the schedule of liens, which was attached to the pleading, includes both the redemptive value and a legal fees value for each of the listed liens to be transferred, and that its inclusion provides a representation of the liens' intrinsic value. (D.I 13 ¶ 26). Second, Plaintiff alleges that once the transfer of certain Tax Liens was initiated, it became clear that they were not worth what had been represented. (*Id.* ¶¶ 37-42). Third, Plaintiff contends that certain of the liens were never transferred to REI and that the purchase price was not then reduced as prescribed in Section 3.02 of the Sale Agreement. (*Id.* ¶ 44, Ex. B). Fourth, Plaintiff contends that LienClear0001 dismissed its requests for recourse, which fall under 3.05 of the Sale Agreement, and instead encouraged them to sue. (*Id.* ¶ 53, Ex. B). Fifth, REI alleges that LienClear0001 refused to provide documentation as to legal fees and costs, which prohibited Plaintiff from fully recovering those values listed in the Tax Liens schedule. (*Id.* ¶ 42). These well-pleaded facts supply sufficient factual information to raise a plausible claim that Defendant LienClear0001 has breached its obligations with respect to the Sale Agreement.

Moreover, these facts raise a reasonable expectation that discovery will reveal evidence of whether LienClear0001 breached obligations imposed by the contract with REI. Plaintiff has also sufficiently pleaded that the alleged breaches caused damage, by providing information that specific liens were either not transferred, not worth what they were purported to be, or were no

longer in effect.  (*Id.* ¶ 37-42).  This pleading is sufficient to make a plausible showing that the alleged breaches of the Sale Agreement led REI to incur financial harm.

For the above reasons, the Court finds that Plaintiff has stated a claim for breach of contract with respect to LienClear0001 and the Sale Agreement.  Defendants' motion to dismiss Count II of the Amended Complaint will be denied.

### D.   Count IV (Breach of Contract Against Byrne – Servicing Agreement

The Amended Complaint alleges that Byrne breached his obligations under the Servicing Contract to "(a) review each of the Tax Liens to determine if any were untransferable due to a redemption or for any other reason, (b) effectuate the assignment of each Tax Lien to REI, and (c) promptly notify REI of any defects, deficiencies or other issues with the Tax Liens," as well as "identify Excluded Tax Liens so that such liens could be deduced from the purchase price to be paid by REI under the Sale Agreement."  (D.I. 13 ¶¶ 96-98).  Plaintiff contends that "Byrne executed the Servicing Agreement in what appears to be his personal capacity as he listed his title as 'servicer' rather than as an officer, or authorized signatory, of LienClear."  (D.I. 17 at 17). Plaintiff further argues that "Byrne, however, appears to have assumed the identity of the servicer under the Servicing Agreement when he executed the agreement as 'Servicer.'"  (*Id.* at 17-18). This argument is unavailing.

"It is a general principle of contract law that only a party to a contract may be sued for breach of that contract."  *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).  Moreover, a corporate employee does not become a party to an agreement simply by signing a contract on behalf of the company for which he works. *See Huff Energy Fund, L.P. v. Gershen*, No. 11116-VCS, 2016 WL 5462958, at *7 (Del. Ch. Sept. 29, 2016) ("They are not parties to the contract and merely executing an agreement on behalf

of [an entity] who is a party to the agreement does not create liability for that signatory in his or her capacity as an officer or director of the corporation.").

The Servicing Agreement, which was attached to the Amended Complaint, was entered "by and among" LienClear0001, REI, and LienClear. (D.I. 13, Ex. D). Byrne is not listed as a party to the Servicing Agreement. The opening paragraph of the agreement sets forth "Servicer" as a defined term to mean LienClear. (*Id.*) "Servicer" is a defined term within the agreement, and its inclusion under Byrne's signature cannot be the basis for personal liability. Moreover, Byrne's signature can be found at the end of Exhibit A to the Servicing Agreement next to the defined term "Servicer" and above the address 401 Park Avenue South 10th Floor, New York, New York, 10016. That address is listed elsewhere in the Servicing Agreement as the address for LienClear. (D.I. 13, Ex. D ¶ 11).

Delaware courts have found that "an agent cannot be found liable for a contract he signed on behalf of the principal as long as somewhere in the contract it is made clear that it is between the principal and a third party." *See Brandt v. Rokeby Realty Co.,* No. No. 97C-10-132-RFS, 2004 WL 2050519, at *10 (Del. Super. Ct. Sept. 8, 2004) (finding that the president of a realty company was acting as an agent and not in his personal capacity, when signing a lease next to the title "landlord"); *see also* Restatement (Third) of Agency § 6.01 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal: (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise.). Here, the plain language of the Servicing Agreement indicates that it was made by and among LienClear, REI, and LienClear0001. Plaintiff cannot stretch the bounds of reality so far as to make a plausible argument that Byrne was operating in his own, personal capacity when signing the Servicing Agreement given that "Servicer" is a defined

term specifically relating to LienClear and the contract includes no indication that the parties agreed that Byrne was operating as both an agent and in his personal capacity. For these reasons, Plaintiff has failed to establish a claim against Byrne in his personal capacity and thus Count IV will be dismissed.

### E. <u>Count V (Civil Conspiracy)</u>

Under Delaware law, a claim for civil conspiracy requires a plaintiff to plead facts supporting "(1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). With respect to the second element, the unlawful act "must be an independent tort action such as fraudulent inducement" and "cannot be attached to claims for fraudulent transfer, breach of contract, or 'breach of the implement covenant of good faith and fair dealing.'" *Aviation W. Charters, LLC v. Freer*, No. 14-09-271, 2015 WL 5138285, at *10 (Del. Super. Ct. July 2, 2015) (citing *Cornell Glasgow, LLC v. LaGrange Properties, LLC,* 2012 WL 3157124, at *5 (Del. Super. Ct. Aug. 1, 2012)). Count V of the Amended Complaint states that "Defendants intentionally concealed the values (or lack thereof) of certain of the Tax Liens sold to REI" and "knowingly misrepresented the redemptive value of the Tax Liens to be substantially greater than their true value." (D.I. 13 ¶ 103). These allegations track with the claims of fraudulent inducement above and Plaintiff has confirmed that those claims are the "unlawful act" underlying its civil conspiracy claim. (D.I. 17 at 18). The Court has already found that Plaintiff has failed to state a claim for fraudulent inducement, and thus its claim for civil conspiracy based on that also fails. Because Plaintiff has failed to plead one of the necessary elements of a claim for civil conspiracy, Count V will be dismissed.

### F.    Count VI (Breach of the Implied Covenant of Good Faith and Fair Dealing)

In Delaware, an implied covenant of good faith and fair dealing attaches to every contract. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). "Stated in its most general terms, the implied covenant requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." *Id.* (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985)). Courts have found, however, that the covenant must only be applied in "rare and fact-intensive cases, [which turn] on issues of compelling fairness." *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998).

"In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: 'a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'" *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 330 (D. Del. 2014) (citing *Anderson v. Wachovia Mtg. Corp.*, 497 F. Supp. 572, 581-82 (D. Del. 2007)). Moreover, "the implied covenant does not apply when 'the subject at issue is expressly covered by the contract.'" *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 20 (Del. Ch. 2009) (citing *Dave Greytak Enters., v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 23 (Del. Ch. 1992)).

Here, the Amended Complaint alleges that "[a]t the time of the sale of the Tax Liens and the execution of the Sale Agreement and the Servicing Agreement, REI had a reasonable expectation that LienClear001 would be providing Tax Liens with redemptive values in excess of the purchase price and that the attorneys' fees paid by REI were in fact collectible by the holders of the Tax Liens." (D.I. 13 ¶ 107). Additionally, the Amended Complaint alleges that "[i]f REI had known that the attorneys' fees were not collectible without additional documentation from the

seller, then REI either would have demanded that documentation prior to closing or would have paid a maximum of $2,500 per tax lien. Similarly, if REI had known that the Tax Liens were not collectible and the redemptive values were less than the purchase price, then REI would have negotiated a lower price. If such negotiations had not been successful, then REI would not have executed the Sale Agreement or the Servicing Agreement, and would not have purchased the Tax Liens." (*Id.* ¶ 108).

Reviewing the allegations, the Court is unable to discern what specific implied contractual obligations Plaintiff is attempting to assert. With respect to the attorneys' fees, the Amended Complaint states that "[u]nder relevant Ohio law . . . only $2,500 in attorneys' fees and costs are deemed to be presumptively reasonable, and therefore, a tax lien holder cannot collect any portion of attorneys' fees and costs charged in excess of this amount unless it has proof that all legal fees incurred were necessary." (D.I. 13 ¶ 42). Thus, it appears Plaintiff suggests there was an implied covenant requiring Defendants to inform REI that, under Ohio law, attorneys' fees are not collectible without additional documentation. It is a venerable principal of American jurisprudence, however, that "ignorance of the law is no excuse," and while such is generally attributed to the civil and criminal statutes, it also holds true for a party entering into a contract. *See e.g. Barlow v. United States, 7 Pet. 404, 411*, 8 L. Ed. 728 (1833*)* (noting it is a "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally."). Plaintiff is a sophisticated party that executed a contract for nearly $2,000,000. It cannot rewrite that contract because it failed to exercise proper due diligence on the law of the state where it was doing its business. Thus, it cannot be said that the parties implicitly agreed that Defendants would inform REI of the laws of Ohio with respect to the recovery of attorneys' fees

and costs, and Plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing on that basis.

Secondly, Plaintiff argues that an implied covenant existed obligating LienClear001 to "provid[e] Tax Liens with redemptive values in excess of the purchase price." (D.I. 13 ¶ 107). Plaintiff includes this same claim in Count II of the complaint for breach of contract against LienClear0001 stating that "LienClear001 breached the Sale Agreement in multiple ways" because it "was obligated to sell to REI Tax Liens with the specific redemptive value set forth by LienClear001 in Schedule 1 to the Sale Agreement" but "many of the Tax Liens did not have the redemptive value that was stated by LienClear001." (*Id.* ¶¶ 80-81). For Count VI, however, Plaintiff argues that Defendants breached an implied covenant because that "had [Plaintiff] known that the Tax Liens were not collectible and the redemptive values were less than the purchase price, then REI would have negotiated a lower price." (*Id.* ¶ 108). As a preliminary matter, the Court dismisses Count VI as to any Defendants beyond LienClear0001. The Sale Agreement, which Plaintiff alleges to contain the implied covenant of providing specific redemptive values, was made between LienClear0001 and REI. As such, Plaintiff cannot claim that any other parties are bound by an alleged covenant therein.

With respect to LienClear0001, Plaintiff has equally failed to plead a specific implied contractual obligation that is not expressly covered by the contract. Effectively, Plaintiff is asking the Court to read into the Sale Agreement a warranty that the Tax Liens would be worth more than the purchase price. Such a significant revision to the terms of the contract is clearly beyond the limited role of which the implied covenant is supposed to play. *See e.g. Delucca v. KKAT Mgmt., LLC*, No. 1384-N, 2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006) (stating "it is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted

differently but in fact did not.").  When approaching an alleged implied covenant, courts in Delaware have asked whether, "is it clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith – had they thought to negotiate with respect to the matter?"  *Allied Capital Corp.*, 910 A.2d at 1032 (quoting *Katz v. Oak Industries, Inc*., 508 A.2d 873, 880 (Del. Ch. 1986)).  Here, the Court must answer in the negative. Had the parties intended to include such a significant warranty provisions, it should have been clear on the face of the agreement.  It is not.  For these reasons, the Court finds that Plaintiff has not sufficiently pleaded a claim for breach of implied warranty of good faith and fair dealing. Count VI will be dismissed.

### G. Count VII (Unjust Enrichment)

Under Delaware Law, a claim of unjust enrichment requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999) (citing *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)).  Courts in Delaware "have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract."  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  Nevertheless, in certain situations "both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories of recovery."  *Narrowstep, Inc. v. Onstream Media Corp*., No. 5114-VCP, 2010 WL 5422405, at *16 (Del. Ch. Dec. 22, 2010) (citing *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp*., No. 3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009)).

Plaintiff contends that "[a]s an alternative to the breach of contract claims, REI alleges that if the Sale Agreement and Servicing Agreement do not comprehensively govern the parties' relationship with respect to the redemptive value of the Tax Liens, then unjust enrichment is a viable alternative remedial claim . . . ." (D.I. 17 at 20). The Amended Complaint however, does not set out the unjust enrichment claim as an alternative pleading. To the contrary, it alleges that "REI hereby re-alleges the preceding paragraphs of this Complaint as if set forth in full herein." (D.I. 13 ¶ 110). By re-alleging each and all of the preceding paragraphs, Plaintiff brings the counts for breach of contract and unjust enrichment together and does plead them in the alternative. This Court finds that such a pleading in the alternative should be explicit. For these reasons, Count VII will be dismissed.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss (D.I. 15) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will follow.