# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REI HOLDINGS, LLC, a Utah limited liability company<br><br>        Plaintiff/<br>        Counterclaim Defendant,<br><br>  v.<br><br>LIENCLEAR – 0001, LLC a Delaware limited liability company, LIENCLEAR – 0002, LLC, a Delaware limited liability company, BCMG, LLC, a Puerto Rico limited liability company, LIENCLEAR, LLC, a Puerto Rico limited liability company, THOMAS MCOSKER, DONALD BYRNE, BFNH, LLC, a Delaware limited liability company, DAN FRIEDMAN and OPTIMUM ASSET MANAGEMENT, LLC, a North Carolina limited liability company,<br><br>        Defendants/<br>        Counterclaim Plaintiffs. | Civil Action No. 1:18-cv-01401-MN<br><br>Jury Trial Demanded |

## PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES
## TO DEFENDANTS' COUNTERCLAIMS

Plaintiff/Counterclaim Defendant REI Holdings, LLC ("REI" or "Plaintiff"), by its undersigned counsel, hereby responds to Defendants/Counterclaim Plaintiffs LienClear – 0001, LLC, LienClear – 0002, LLC, BCMG, LLC, LienClear, LLC, Thomas McOsker, Donald Byrne, and BFNH, LLC's (collectively, "Answering Defendants") Counterclaims as follows:

## COUNTERCLAIMS

## FACTUAL BACKGROUND

1.  On December 22, 2015, LienClear0001 and REI entered into a Tax Lien Purchase and Sale Agreement (the "Ohio (LienClear0001) Agreement"). CC Ex. B.

**RESPONSE:** Admitted.

2. Pursuant to Section 4.02 of the Ohio (LienClear0001) Agreement, REI represented and warranted that it "is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith." CC Ex. B § 4.02(d).

**RESPONSE**: The allegations in paragraph 2 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Ohio (LienClear0001) Agreement for a true and complete statement of its contents.

3. Pursuant to Section 4.04 of the Ohio (LienClear0001) Agreement, the parties agreed that they each would indemnify, and hold harmless, and, if requested by the other party in its sole and absolute discretion, defend the other party from and against any and all Losses[3] to the extent arising out of or related to a breach of the Ohio (LienClear0001) Agreement by such party, or any act or omission constituting gross negligence or willful misconduct on the part of such party, or any such party's breach of any applicable law.

**RESPONSE**: The allegations in paragraph 3 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Ohio (LienClear0001) Agreement for a true and complete statement of its contents.

4. In connection with the Ohio (LienClear0001) Agreement, REI and LienClear executed a separate Ohio Servicing Agreement (the "Ohio Servicing Agreement"). CC Ex. D.

**RESPONSE**: Admitted.

5. The Ohio Servicing Agreement provides that the "substantially prevailing party in any action or proceeding brought to enforce or interpret this Agreement shall be awarded and receive its costs and reasonable attorney's fees." CC Ex. D § 14.

**RESPONSE**: The allegations in paragraph 5 purport to characterize provisions of the Ohio Servicing Agreement, and no response to those characterizations is required. To the extent a response is required, REI respectfully refers the Court to the Ohio Servicing Agreement for a true and complete statement of its contents.

6. On July 6, 2015, LienClear0001 and REI entered a Tax Lien Purchase and Sale Agreement (the "Second Connecticut (LienClear0001) Agreement"). CC Ex. G.

---

[3] Section 1.01 defines "Losses" to mean "any claims, demands, actions, causes of action, judgments, damages, recoveries, fines, penalties, interest, liabilities, fees, costs, expenses and other losses, including reasonable attorneys' fees and court costs." Ex. B, Section 1.01.

2

**RESPONSE:** Admitted.

7. To Answering Defendant's knowledge and belief, on or around February 2015 REI engaged Connecticut attorney Edward L. Marcus and his firm, The Marcus Law Firm, (collectively, "Marcus") to act as servicer and collections attorney for certain Connecticut tax liens REI would subsequently acquire from Optimum (the "First Connecticut Liens").

**RESPONSE:** REI admits that it engaged The Marcus Law Firm to act as a collections attorney. REI denies the remaining allegations in paragraph 7.

8. Pursuant to Section 4.02 of the Second Connecticut (LienClear0001) Agreement, REI represented and warranted that it "is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith." CC Ex. G § 4.02(d).

**RESPONSE:** The allegations in paragraph 8 purport to characterize provisions of the Second Connecticut (LienClear0001) Agreement, and no response to those characterizations is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

9. Pursuant to Section 4.04 the Second Connecticut (LienClear0001) Agreement, the parties agreed that they each would indemnify, and hold harmless, and, if requested by the other party in its sole and absolute discretion, defend the other party from and against any and all Losses[4] to the extent arising out of or related to a breach of the Second Connecticut (LienClear0001) Agreement by such party, or any act or omission constituting gross negligence or willful misconduct on the part of such party, or any such party's breach of any applicable law. CC Ex. G § 4.04.

**RESPONSE:** The allegations in paragraph 9 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

10. The Second Connecticut (LienClear0001) Agreement designates "a federal or state court of competent jurisdiction situated in Wilmington, Delaware" as the exclusive forum to file or purse "[a]ny action to enforce or interpret this Agreement, or arising out of or relating to this Agreement involving the parties hereto." CC Ex. G § 5.02.

---

[4] Section 1.01 defines "Losses" to mean "any claims, demands, actions, causes of action, judgments, damages, recoveries, fines, penalties, interest, liabilities, fees, costs, expenses and other losses, including reasonable attorneys' fees and court costs." Ex. G, Section 1.01.

3

**RESPONSE:** The allegations in paragraph 10 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

11. On June 12, 2017, REI filed an action in the United States District Court for the Central District of Utah purporting to state claims arising from the Second Connecticut (LienClear0001) Agreement and the Second Connecticut Servicing Agreement (the "Utah Action").

**RESPONSE:** Admitted.

12. Lienclear, BCMG, BFNH, McOsker, and Byrne incurred attorneys' fees, costs, and related damages as a result of having to defend and seek the dismissal of REI's Utah Action.

**RESPONSE:** REI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and denies them on that basis. REI specifically denies that any Defendant suffered any "damages" as a result of the Utah Action.

13. The Second Connecticut Servicing Agreement provides that the "substantially prevailing party in any action or proceeding brought to enforce or interpret this Agreement shall be awarded and receive its costs and reasonable attorney's fees (including those of in-house counsel." CC Ex. H § 14.

**RESPONSE:** The allegations in paragraph 13 purport to characterize provisions of the Second Connecticut Servicing Agreement, and no response to those characterizations is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut Servicing Agreement for a true and complete statement of its contents.

14. REI filed the operative Consolidated Complaint in this action on December 12, 2019 alleging in pertinent part that LienClear0001 breached the Ohio (LienClear0001) Agreement and the Second Connecticut (LienClear0001) Agreement because REI failed to achieve the redemptive values of the Tax Liens. *See* CC ¶¶ 36, 96, 113, and 155.

**RESPONSE:** The allegations in paragraph 14 purport to characterize the averments contained in the Consolidated Complaint, and no response to those characterizations is required. To the extent a response is required, REI respectfully refers the Court to the Consolidated Complaint for a true and complete statement of its contents.

15. REI appears to believe that the redemptive values in the schedules to the Ohio (LienClear0001) Agreement and the Second Connecticut (LienClear0001) Agreement are "valuations" of the Tax Liens. *See* CC ¶ 38 ("Defendants did not provide accurate redemptive values (i.e., valuations"). Or further yet, that REI is guaranteed a certain profit when a tax lien is sold. *See, e.g.*, CC ¶¶ 36 and 113.

**RESPONSE:** The allegations in paragraph 15 purport to characterize the averments contained in the Consolidated Complaint, and no response to those characterizations is required. To the extent a response is required, REI respectfully refers the Court to the Consolidated Complaint for a true and complete statement of its contents.

16. Sophisticated purchasers in the tax lien industry such as REI understand that the industry is inherently volatile[5] and that the purported redemptive values of tax liens are not guarantees of the ultimate value of the tax liens.

**RESPONSE:** Denied.

17. Sophisticated purchasers of tax liens further understand inherent risks of the distressed asset industry including that fact that not all tax liens are ultimately profitable. Furthermore, REI offers educational lectures, seminars and training to individual investors on the inherent risks associated with tax lien and tax deed investments so they should not have allowed themselves to be dissuaded by any misconceptions or misinterpretations in any information that may have been provided to them by Answering Defendants.

**RESPONSE:** REI admits that there are inherent risks in the distressed asset industry and that it offers seminars to investors regarding tax lien and tax deed investments. The remaining allegations in paragraph 17 are denied.

## COUNT I
(Breach of the Ohio (LienClear0001) Agreement)

18. Answering Defendant incorporates the allegations of paragraphs 1 through 12 of the Counterclaims as if fully set forth herein.

**RESPONSE:** REI incorporates its responses to paragraphs 1 through 12 of the Counterclaims as if fully set forth herein.

---

[5] It is important to note that REI's Chief Executive Officer, Brandon Neff, has ample experience in volatile and high-risk investments as he has been previously sanctioned by the United States Security and Exchange Commission in Administrative Proceeding File No. 3-18619 for acting as an unregistered and unlicensed broker offering penny stocks.

19. On December 22, 2015, LienClear0001 and REI entered into the Ohio (LienClear0001) Agreement.

**RESPONSE:** Admitted.

20. The Ohio (LienClear0001) Agreement is a binding and enforceable agreement between LienClear0001 and REI.

**RESPONSE:** The allegations in paragraph 20 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Ohio (LienClear0001) Agreement for a true and complete statement of its contents.

21. Pursuant to Section 4.02 of the Ohio (LienClear0001) Agreement, REI represented and warranted that it "is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith." CC Ex. B § 4.02(d).

**RESPONSE:** The allegations in paragraph 21 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Ohio (LienClear0001) Agreement for a true and complete statement of its contents.

22. REI breached the Ohio (LienClear0001) Agreement when it falsely represented that it is a sophisticated party that understands the tax lien industry and associated risks.

**RESPONSE:** Denied.

23. Pursuant to Section 4.04 the Ohio (LienClear0001) Agreement, the parties agreed that they each would indemnify, and hold harmless, and, if requested by the other party in its sole and absolute discretion, defend the other party from and against any and all Losses to the extent arising out of or related to a breach of the Ohio (LienClear0001) Agreement by such party.

**RESPONSE:** The allegations in paragraph 23 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Ohio (LienClear0001) Agreement for a true and complete statement of its contents.

24. Pursuant to the Ohio Servicing Agreement, REI's breach of the Ohio (LienClear0001) Agreement has caused the enforcement and/or interpretation of the Ohio Servicing Agreement.

**RESPONSE:** Denied.

25. Due to REI's breach of its representations in the Ohio (LienClear0001) Agreement, LienClear0001 has been damaged in an amount to be determined at trial.

**RESPONSE:** Denied.

## COUNT II
(Breach of the Second Connecticut (LienClear0001) Agreement)

26. Answering Defendant incorporates the allegations of paragraphs 1 through 10 of the Counterclaims as if fully set forth herein.

**RESPONSE:** REI incorporates its responses to paragraphs 1 through 10 of the Counterclaims as if fully set forth herein.

27. On July 6, 2015, LienClear0001 and REI entered into the Second Connecticut (LienClear0001) Agreement.

**RESPONSE:** Admitted.

28. The Second Connecticut (LienClear0001) Agreement is a binding and enforceable agreement between LienClear0001 and REI.

**RESPONSE:** The allegations in paragraph 28 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

29. Pursuant to Section 4.02 of the Second Connecticut (LienClear0001) Agreement, REI represented and warranted that it "is a sophisticated party that understands the Tax Liens, its investment in the Tax Liens and the risks associated therewith." CC Ex. G § 4.02(d).

**RESPONSE:** The allegations in paragraph 29 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

30. REI breached the Second Connecticut (LienClear0001) Agreement when it falsely represented that it is a sophisticated party that understands the tax lien industry and associated risks.

**RESPONSE:** Denied.

31. Pursuant to Section 4.04 the Second Connecticut (LienClear0001) Agreement, the parties agreed that they each would indemnify, and hold harmless, and, if requested by the other

party in its sole and absolute discretion, defend the other party from and against any and all Losses to the extent arising out of or related to a breach of the Second Connecticut (LienClear0001) Agreement by such party.

**RESPONSE:** The allegations in paragraph 31 are legal conclusions to which no response is required. To the extent a response is required, REI respectfully refers the Court to the Second Connecticut (LienClear0001) Agreement for a true and complete statement of its contents.

32. Due to REI's breach of its representations in the Second Connecticut (LienClear0001) Agreement, LienClear0001 has been damaged in an amount to be determined at trial.

**RESPONSE:** Denied.

## RELIEF REQUESTED

**WHEREFORE**, Answering Defendants respectfully requests that this Court enter judgment in Answering Defendants favor and against Plaintiff, as follows:

A. Awarding Answering Defendants compensatory damages in amount to be proven at trial;

B. Awarding Answering Defendants pre- and post-judgment interest, plus costs and expenses, including reasonable attorneys' fees; and

C. Granting such other and further relief as the Court may deem just, equitable, and proper.

**RESPONSE:** REI denies that any Answering Defendant is entitled to any relief related to the Counterclaims. To the extent that the Prayer for Relief contains any allegations, REI denies them.

## FIRST AFFIRMATIVE DEFENSE

Answering Defendants fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Counterclaims, and each and every cause of action raised therein, are barred, in whole or in part, by Answering Defendants' own material breaches and failures to perform their own contractual duties.

## THIRD AFFIRMATIVE DEFENSE

Answering Defendants' claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Answering Defendants' claims are barred by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

REI's right to set off bars all or part of Answering Defendants' claims.

### SIXTH AFFIRMATIVE DEFENSE

REI's right to recoupment bars all or part of Answering Defendants' claims.

Dated: January 8, 2021

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Gregory E. Stuhlman*
Joseph B. Cicero (No. 4388)
Gregory E. Stuhlman (No. 4765)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
cicero@chipmanbrown.com
stuhlman@chipmanbrown.com

*Attorneys for Plaintiff/Counterclaim Defendant*